**Mark McKENNEY**

v.

**Charles ZIMMERMAN.**

**Civ. A. No. 87–3211.**

United States District Court, E.D. Pennsylvania.

July 1, 1988.

Mark McKenney, Graterford, Pa., pro se.

Ronald D. Castille, Dist. Atty., Elizabeth J. Chambers, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Petitioner Mark McKenney, currently confined at Graterford, filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner claims that his defense counsel's failure to interview a witness, Perry Ford, was ineffective assistance of counsel. The Magistrate to whom the petition was referred for a report and recommendation, recommended granting the writ of habeas corpus based on ineffective assistance of counsel. The

District Attorney filed timely objections to the Magistrate's report and recommendation. After a *de novo* review of the record, the Court has, for the reasons set forth below, determined that petitioner's claim of ineffective assistance of counsel is without merit and will deny the grant of the writ of habeas corpus.

Petitioner was found guilty of first degree murder, two counts of aggravated assault, two counts of recklessly endangering another person, and possessing an instrument of crime, for which he was sentenced to life imprisonment and concurrent terms of five to ten years for each aggravated assault conviction, one to two years for each reckless endangerment conviction, and two and one-half to five years for the weapons offense. Petitioner appealed to the Pennsylvania Superior Court, claiming ineffective assistance of counsel. The Superior Court determined that there was no merit to petitioner's claim of ineffective assistance of counsel. The Pennsylvania Supreme Court denied allocatur.

On the first day of trial, in a colloquy conducted by the Court, petitioner waived his right to a jury trial and indicated by his answers that he understood the significance of the waiver and the charges against him, that he was not under the influence of any drugs or alcohol, and that he had never received any psychiatric care. It was further established that petitioner was twenty-five years of age, and had completed his schooling through the ninth grade. (N.T. 1–14).

The Commonwealth called as witnesses two victims of the shooting, Richard Gardiner and Ronald Cain, each of whom testified that on June 12, 1982 at approximately 8:00 p.m., petitioner approached them and Wayne Johnson, who was with them, at 39th and Poplar Streets in Philadelphia in front of a bar. Petitioner began arguing with Johnson over Johnson's refusal to repay a loan. (N.T. 20–22). Petitioner and Johnson began to spar around, and Johnson hit petitioner on the chin. Johnson apologized and petitioner accepted Johnson's apology. (N.T. 22, 53). Petitioner then walked away but returned in approximately fifteen minutes with a gun. (N.T. 23, 54). After spotting petitioner, Johnson walked toward him. The two walked down Poplar Street toward Cain and Gardiner and were talking. (N.T. 23–24, 54–55). Johnson reached over and touched the butt of petitioner's gun which was visibly protruding from petitioner's pocket. Petitioner walked away, looked around, and fired approximately six shots. (N.T. 24–26, 55–56). Two struck Johnson, and he fell to the ground. Petitioner also shot Cain and Gardiner. (N.T. 26–27, 56). Johnson was pronounced dead at Presbyterian Hospital. (N.T. 18–19). Gardiner and Cain were both hospitalized. (N.T. 26–27, 56–57).

A third witness, Norman Bryant, who was in the bar, testified that he heard gunshots outside the bar, and when he went outside he saw the decedent Johnson on the ground. He also stated that he saw the petitioner point a gun inside the bar and click it four times. (N.T. 73).

The defense called petitioner to testify. He stated that he had been drinking, getting high, smoking reefers, and had taken some pills on the day of the incident. (N.T. 83). He also testified that he could not remember anything concerning the events of June 12, 1982. (N.T. 86–91). He did testify that after the incident he left his home in New Jersey and lived in New York and Florida, until he was arrested in August of 1983, fourteen months after the shooting. (N.T. 94–97). The defense also called petitioner's father who testified that on the day of the shooting petitioner appeared "high." (N.T. 110, 112).

On the second day of trial, counsel for the petitioner stated to the Court that his next witnesses had not "arrived yet." The Court recessed for one hour and upon the Judge's return to the bench, defense counsel informed the Court that his witnesses had still not arrived. Defense counsel then explained to the Court that the witnesses had informed petitioner's family that they would appear voluntarily and testify. (N.T. 113–114). Defense counsel then asked for and was granted a continuance until the next day. Defense counsel stated to the Court that he would serve a subpoe-

na on the witnesses, and that he would request a bench warrant in the event they failed to appear pursuant to the subpoena. (N.T. 115, 118).

At the opening of the third day of trial, defense counsel approached the bench and informed the court that defense witnesses Perry Ford and Robert Dorsey had failed to appear although subpoenas had been served on them. Defense counsel stated that he personally served one subpoena and the petitioner's sister served the other. The following colloquy occurred between defense counsel and the Court concerning the witness Perry Ford:

MR. BERRY: Now, Your Honor, you are about ready to issue a bench warrant for these two witnesses; but after a conference with my client, he has indicated to me that he did not want these witnesses to come in.

THE COURT: Not that he does not want these witnesses to come in, he doesn't want to wait for these witnesses. In other words, if these witnesses arrived he would call them to testify; is that correct?

MR. BERRY: Yes, sir. If they had been here, but we waited for them yesterday, and they were not here yesterday, and they had told the family, and one had called the family, and said he would be here, and the father had talked to Mr. Dorsey, and he said he would be here, and no one showed yesterday.

THE COURT: All right. Now as far as Perry Ford, what would he have testified to, if he were here?

MR. BERRY: It is my understanding, Your Honor, because I didn't talk to Mr. Ford. Mr. Ford had talked to the mother of the defendant and I talked to the mother, and Mr. Ford had talked to the sister of the defendant and I talked to the sister.

THE COURT: According to your interpretation he would testify to—

MR. BERRY: He would have testified that he was there, saw what happened and that if he were called to testify, he would say that, I believe, that the defendant did not go back to get a gun and

that these three individuals, all three of them, jumped on the defendant and beat him right there at 39th and Poplar.

THE COURT: But would he have testified that the defendant shot the—

MR. BERRY: Yes, he would have.

\* \* \* \* \* \*

THE COURT: Mr. Ford [w]as the witness who would testify that the three jumped on the defendant.

MR. BERRY: Yes, sir.

THE COURT: And that the defendant—

MR. BERRY: Shot—

THE COURT: In self-defense.

MR. BERRY: Yes, Your Honor, yes.

THE COURT: Because the defendant testified that he didn't remember what happened.

MR. BERRY: Yes, Your Honor.

THE COURT: Do you understand that?

MR. BERRY: I understand that.

THE COURT: We will put that on the record.

\* \* \* \* \* \*

MR. BERRY: Your Honor, for purposes later, I would ask Your Honor to question the defendant, more or less colloquy the defendant to make sure that he understands what he is doing and that Mr. Ford would be an important witness in this case and he agrees of his own free will ...

THE COURT: Yes.

MR. BERRY: Not to call Mr. Ford.

THE COURT: Yes. Do you want to do that now.

MR. BERRY: Yes, Your Honor.

THE COURT: Mr. McKenney?

(N.T. 120–121, 122, 123–124).

The Court, pursuant to defense counsel's request, called the petitioner to the bar of the Court and the following colloquy occurred:

BY THE COURT:

Q. Mr. McKenney?

A. Yes.

Q. Now, Mr. McKenney, you have a right to use the subpoena powers of the Court in order to bring in your witnesses and have them testify on your behalf.

A. Yes.

Q. Now, I just extracted an offer of proof from counsel as to what these witnesses would testify to and you realize that Mr. Dorsey—

THE COURT: Is that one of the eyewitnesses?

MR. BERRY: Mr. Ford.

Q. Mr. Ford is a very important witness in your case. In other words, he could testify that you did not leave, that you did not go back and bring a gun, that it happened at 39th and Poplar Streets and that the three of these fellows jumped on you before the incident occurred.

A. Yes.

Q. Do you understand that?

A. Yes.

Q. But you are saying that because we are trying to get these witnesses and they are not coming in, that you wish this trial to proceed without them; is that right?

A. Yes.

Q. Now, do you understand that you're giving up your right to present the witnesses, an important witness in the case, in your behalf; do you understand that?

A. Yes.

Q. Are you willing to do that?

A. Yes.

THE COURT: All right. Note that for the record.

BY MR. BERRY:

Q. Has anybody threatened you or promised you anyting for you to do this?

A. No.

Q. You're doing this of your own free will?

A. Yes.

Q. Are you satisfied with my representation of you up to this point?

A. Yes.

Q. Do you have any questions?

A. No.

MR. BERRY: Does the District Attorney have any questions?

MR. WATKINS: I have no questions, Your Honor. Thank you, Mr. Berry.

MR. BERRY: Your Honor, as to the bench warrants, I guess Your Honor is going to withdraw them?

THE COURT: Yes.

MR. BERRY: Your Honor, with that, the defense would rest.

THE COURT: Yes.

(N.T. 124–126).

■ As heretofore pointed out, petitioner claims that his defense counsel was ineffective in that he failed to interview the witness, Perry Ford. What constitutes ineffective assistance of counsel has been set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner for a writ of habeas corpus claiming ineffective assistance of counsel has a double burden. Petitioner must show (1) that his counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the verdict would have been different. *Id.* 104 S.Ct. at 2064, 2068.

As pointed out in *Strickland*, judicial scrutiny of counsel's performance must be highly deferential since it is "all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 2065. In judging the alleged ineffectiveness of counsel, this Court has considered the "reasonableness" of counsel's conduct as evidenced by the above quoted portions of the record, and has determined that, in the light of all the circumstances evidenced by the record, the conduct of petitioner's counsel was not unreasonable.

■ As the record shows, defense counsel was informed by the family that Perry Ford would voluntarily come to court and testify that the petitioner fired his gun in self-defense. When Perry Ford did not appear, defense counsel requested a continuance in order to subpoena Perry Ford. Although Perry Ford was subpoenaed, he did not appear on the third day of trial pursuant to the subpoena served upon him. Defense counsel requested a bench war-

rant. However, the record shows that when the Court was ready to issue a bench warrant, defense counsel advised the Court that the petitioner did not "want to wait" for Perry Ford. (N.T. 120). At that juncture, defense counsel advised the judge, who was hearing the case non-jury, that Perry Ford had talked to the mother and sister of the petitioner and that they told defense counsel that Perry Ford would voluntarily testify that three individuals had jumped the petitioner and beat him, and that petitioner fired his gun in self-defense.

The record shows that defense counsel then requested the Judge to colloquy the petitioner to make sure that he understood what he was doing and point out to petitioner that Perry Ford would be an important witness in this case and to make certain that petitioner of his own free will was determining that a bench warrant should not issue for Perry Ford.

The Judge called the petitioner to the bar of the court and proceeded to colloquy him concerning his insistance that no bench warrant should be issued for Perry Ford. The Judge carefully explained to the petitioner that Perry Ford would be a "very important witness in your case" who would "testify that you did not leave, that you did not go back and bring a gun and that the three of these fellows had jumped on you before the incident occurred." (N.T. 124).

The petitioner's answers clearly demonstrate that he understood, and that he was making this decision of his own free will. Defense counsel at that time also asked petitioner whether he was satisfied with the representation of defense counsel and petitioner said that he was. (N.T. 125).

As pointed out in *Strickland*, "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case viewed as of the time of counsel's conduct." *Id.* at 2066. Under the circumstances revealed by the trial record, this Court is unable to conclude that defense counsel's failure to interview Perry Ford "fell below an objective standard of reasonableness."

Defense counsel was assured by the members of the petitioner's family that Perry Ford would voluntarily appear in the courtroom and testify. When Perry Ford did not appear, defense counsel had him served with a subpoena. When Perry Ford failed to appear pursuant to a subpoena, defense counsel requested a bench warrant, and when the Court was about to sign the bench warrant, petitioner advised defense counsel that he did not want the bench warrant issued and insisted upon proceeding without the witness Perry Ford. Defense counsel then asked the Court to colloquy petitioner on the record in order to make certain that petitioner fully understood the consequences of his decision, and that petitioner's decision was a voluntary one. The trial judge conduced a thorough colloquy with the petitioner, which colloquy makes clear that the petitioner was knowledgeable concerning the consequences of his decision not to have a bench warrant issued for Perry Ford and that he was making this decision of his own free will.

This Court has determined that in light of all the circumstances, shown by the record at the trial, defense counsel's actions were within the range of professionally competent assistance.

Initially, this Court considered, pursuant to *O'Halloran v. Ryan*, 835 F.2d 506 (3rd Cir.1987), that this matter should be returned to provide the petitioner an additional opportunity in a state post-conviction proceeding to develop factual support for his ineffective assistance of counsel claim. However, in view of our finding that the record at the trial demonstrates that counsel's representation did not fall below the objective standard of reasonableness applied to defense counsel in criminal cases, the Court determined that there was no basis for the application of *O'Halloran*. As heretofore pointed out, a claim of ineffective assistance of counsel requires a petitioner to show *both* that his counsel's representation fell below an objective standard of reasonness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the verdict would have been different. Since this Court has determined that, under all the circumstances demonstrated by the record at trial, defense counsel's failure to inter-

view the witness Perry Ford did *not* fall below an objective standard of reasonableness, returning this matter for additional state post-conviction proceedings in order to develop factual support to show prejudice is unnecessary.

The petitioner in this case made no attempt to show prejudice. Even assuming that the conduct of his defense counsel fell below the objective standard of reasonableness, it would be most difficult to conclude that there is a reasonable probability that the verdict would have been different. Even if the witness Perry Ford had been interviewed by defense counsel, it would be difficult to conclude that Perry Ford would have appeared either voluntarily or pursuant to a subpoena. Not one of the three witnesses presented by the Commonwealth mentioned Perry Ford or any other eyewitnesses to the shooting. Two of the Commonwealth's witnesses testified that petitioner left the scene and returned within fifteen minutes with a gun, and the third Commonwealth witness testified that petitioner "had a gun pointed inside the bar." (N.T. 73).

Accordingly, on the basis of our *de novo* review of the record in this case, this Court declines to follow the recommendation of the Magistrate that a writ of habeas corpus be granted, and will order that the petition of Mark McKenney for a writ of habeas corpus be denied.